SHELBY *v.* STATE.

Criminal 4079

Opinion delivered February 7, 1938.

*Strait & Strait,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

MEHAFFY, J. The deputy prosecuting attorney filed information against appellant charging him with operating a pool room for hire within three miles of a school or church in Conway county, Arkansas.

The case was tried on the following agreed statement of facts:

"It is hereby agreed by and between the state of Arkansas, plaintiff, acting by and through its deputy

prosecuting attorney, E. A. Williams, and Mark Shelby, by his attorneys, Strait & Strait, that the facts pertaining to the charge against the said defendant, Mark Shelby, for operating pool tables in Morrilton, Conway county, Arkansas, now pending in the circuit court of said county, are as follows, to-wit:

"1. That the Petit Jean Club is a social, unincorporated organization, composed exclusively of persons constituting the membership thereof, whose primary object is the benefit, pleasure and intercourse among the members, and that said club maintains club rooms with apparatus and facilities adapted to promote the comfort and enjoyment of its members, and to render the club rooms an attractive and beneficial place of resort.

"2. It operates its affairs by persons elected from its membership as president, vice-president, secretary, treasurer, who with ......................... added members constitute a board of governors and hold their office or position for one year and until their successors are elected.

"3. The secretary is made treasurer and custodian of the funds of the club which are disbursed from the orders of the club and the board of governors thereof.

"4. At the present time the defendant, Mark Shelby, is the secretary of the club and as such is the custodian of the funds of the club, and disburses them as directed by the governing board.

"5. For the amusement and entertainment of its members, tables for the playing of games, such as dominoes, checkers, rummy card games and other card games, are owned and maintained by the club, and in addition thereto the club owns and operates exclusively for use of its members pool tables.

"6. For the purpose of raising funds to pay for and maintain the equipment of the club, the rent on the building and the salary and compensation of the club's manager, each person, when his application for membership is approved by the governing board, and upon becoming a member, pays 50 cents as an initial fee. Under the provisions and by-laws of the club, all members who play the game of pool are required to donate or pay 5

cents per cue in each game of pool played, which is deposited in a box maintained in the room where the pool tables are located, and which constitutes a part of the funds of the club, and 5 cents per game for any other game played, and handled in the same way. ·

"7. To each member is issued a membership card, and in addition to the membership cards, courtesy cards are occasionally issued to members of like or similar clubs outside of Conway county, which makes such holder in effect an honorary member of the Petit Jean Club.

"8. The privileges of the club are exclusively for the members thereof, and no person not a member is permitted to the club rooms or participation in its social features. The defendant, Mark Shelby, is employed as manager of the club rooms of the organization, and is also an officer thereof, as set out above, and is paid a salary in connection with and as compensation for his services as such officer and manager. As such he also receives the funds of the club, including the 5 cents per cue paid by the members for each game of pool played which is deposited in a receptacle by the players maintained in the club rooms, and once each day these funds are taken from such receptacle in the personal possession of the defendant, Mark Shelby, as manager of the club.

"9. Under the facts above stated the said Mark Shelby is personally charged with operating a pool hall or pool tables in Morrilton, Arkansas, in violation of act No. 88 of the General Assembly of the state of Arkansas, approved February 17th, 1919, which prohibits any person or corporation to operate for hire any billiard hall or pool tables within three miles of any school or church in Conway county.

"10. It is conceded that the club rooms of the Petit Jean Club are located within three miles of the public schools and of all churches in Morrilton, Arkansas, a city within Conway county."

Act No. 88 of the Acts of 1919 reads as follows: "Section 1. That hereafter it shall be unlawful for any person or corporation to operate for hire any billiard

hall or pool room within three miles of any school or church house in Lawrence, Crawford, Hot Spring, Independence, Washington, Sevier, Scott, Saline, Clay, Stone, Sharp, Lafayette, Marion, Perry and Conway counties.

"Section 2. Be it further enacted, that any person violating § 1 of this act shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than fifty ($50) dollars, nor more than two hundred ($200) dollars, each day that said § 1 is violated shall be a separate offense." To reverse a judgment of conviction this appeal is prosecuted.

The appellant contends that under the agreed statement of facts, there is no contention that his employment as manager constitutes or is a subterfuge enabling him personally to operate a billiard hall or pool room in violation of the act, nor is there any contention of rudeness, drinking, or of any misconduct in the club room managed by him.

The appellant is operating the pool room. This is admitted. It is also conceded that the club rooms are located within three miles of the public school and of all churches in Morrilton. The appellant is employed as manager of the club rooms and is also an officer, and is paid a salary in connection with and as compensation for his services. He also receives the funds of the club, including five cents per cue paid by members for each game of pool played. Each day these funds are collected by the appellant, who is secretary of the club and custodian of the funds. He is also treasurer, and his salary is paid from the money received by the operation of the pool room. Each member pays fifty cents as an initial fee, and from this money and the five cents per cue his salary is paid. This, we think, is an evasion of the law. The law prohibits the operation of a billiard hall or pool room for hire. It makes no difference how the hiring is done. Certainly it is being operated for hire when each person who plays a game must pay five cents per cue. If one could operate a pool room in this manner, then the law would be worthless, because any

number of persons could agree that they would operate a pool room for hire and pay the manager out of the proceeds.

Appellant calls attention to 15 R. C. L. 134, § 118. Section 117, the one preceding that cited by appellant, states that there is conflict in the opinion as to the applicability of license laws to social clubs, and it is also stated in this section: "While the language of a particular statute, as indicating the legislative intent, is frequently given great weight in deciding the question, a survey of the cases leaves a distinct impression that the general inclination, or lack of it, on the part of courts, to make an exception in favor of social clubs accounts for the results in a considerable number of cases. There hardly seems to be any other basis on which to account for many decisions in favor of clubs, especially when the purpose of all liquor legislation is considered, and it is borne in mind that to permit traffic and drinking at social clubs is to make a palpable distinction in favor of the few who are sufficiently prosperous and prominent to boast membership in such an organization, and further that extreme refinements in reason are often resorted to for the purpose of judicially legalizing such acts, such as the theory that although the club purchases the liquor and charges each member with that ordered by him, the title before distribution rests in the members in common, thus making the delivery of liquor to a member not a sale, but the mere delivery to him of his own liquor, or at least that in which he has a special property interest."

If social clubs like this can operate a pool room and not be subject to the same penalties that persons not members of the club would be subject to, the law would be meaningless. As we have said, any number of persons could organize and operate pool rooms for hire and then defend on the ground that it was a social club and they permitted no one to enter except members.

While there is conflict in the authorities, this court is committed to the doctrine that a pool room cannot be

so operated for hire without subjecting those who operate to punishment under the law.

The quotation from Ruling Case Law is under the subject of Intoxicating Liquors, but the same principle applies here.

It is argued that appellant is merely an employee of the club, but he is the manager, operates the pool room and collects for each cue. It is argued that the pool tables belong to the members, just as the card tables, dominoes, checkers and other games belong to them. This was the argument made in the defense of social clubs selling intoxicating liquors. It was contended that they did not sell liquor, because the purchase by the unincorporated club resulted in the liquor belonging to the members, and, therefore, it was not a sale of liquor, but a delivery to the member of his own liquor.

The Supreme Court of Colorado, in passing on a similar question said: "The decisions are in irreconcilable conflict. . . . A member of such an association has no individual right or interest in the property, and owns no proportionate share of it, but only has a right to the joint use so long as he continues to be a member. Even if they were tenants in common, a transfer of a specific part of the property to one for a stipulated price would be a sale. . . . We agree with the views expressed in *State* v. *Easton Social, Literary & Musical Club,* 73 Md. 97, 20 Atl. 783, 10 L. R. A. 64, that there is no occasion to be astute and to indulge in questionable refinements in order to relieve these corporations of the just consequences of their acts, or to endeavor by artificial or fictitious reasonings to permit persons in combination to do what individuals without combination could not do." *Manning* v. *Canon City,* 45 Colo. 571, 101 Pac. 978; 23 L. R. A. (N. S.) 192.

We said in a recent case: "A pool room run for hire in the form of membership fees and monthly dues and which is open to the public upon the payment of membership fees is just as vicious in its tendencies and as injurious to public peace and good morals, as if run for so much a game. Its tendencies, such as leading to idle-

ness, gambling and other vices are just the same whether operated for so much per game or for dues and fees." *State* v. *May,* 194 Ark. 547, 108 S. W. 2d 895.

If the operation of a pool room for hire is wrong, and evidently the Legislature thought it was, there would seem to be no reason why it is wrong for an individual to operate such a place and not wrong when operated by an association or combination.

The judgment of the circuit court is affirmed.